UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

CLARENCE WALKER, JR.,

    Plaintiff,

    v.

CAROLYN W. COLVIN,

    Defendant.

No. C 13-4734 PJH

**ORDER RE MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff Clarence Walker Jr. ("Walker") seeks judicial review of the decision by the Commissioner of Social Security ("the Commissioner") denying his claim for disability benefits. This action is before the court on the parties' cross-motions for summary judgment. Having carefully reviewed and considered the papers, administrative record, and relevant legal authority, the court DENIES Walker's motion for summary judgment, and GRANTS the Commissioner's cross-motion for summary judgment as follows.

## BACKGROUND

Walker previously filed an application for social security disability insurance ("SSDI") benefits on April 1, 2006. (Administrative Record ("A.R.") 15.) Walker alleged that he became disabled on November 1, 2005, as a result of injuries to his back, neck, and shoulders caused by a motor vehicle accident. (A.R. 15.) The Commissioner denied this prior claim in November 2006. (A.R. 213.) Walker did not appeal, but rather, filed the current claim on October 29, 2007, alleging the same onset date of disability of November 1, 2005. (A.R. 15.) The claim was initially denied on January 31, 2008, and upon reconsideration on June 2, 2008. (A.R. 102.) Thereafter, Walker filed a written request for

a hearing on July 31, 2008. Id. Walker, represented by an attorney, appeared and testified at a hearing held on October 20, 2009, before the Administrative Law Judge ("ALJ"). Id. In a written decision dated December 30, 2009, the ALJ found that Walker was "not disabled" within the meaning of the Social Security Act ("the Act"). (A.R. 109.)

Walker appealed, and on May 27, 2011, the Appeals Council granted his Request for Review, remanding the matter to the ALJ with instructions to give further consideration to Walker's maximum residual functional capacity ("RFC") and provide rationale with specific references to evidence of record in support of the assessed limitations. (A.R. 115.) The ALJ was further instructed to obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations (of the claimant's) on his occupational base. Id. On September 26, 2011, Walker appeared again at a hearing before the ALJ. (A.R. 31). By written decision dated November 4, 2011, the ALJ denied Walker's claim, finding that he was not disabled. (A.R. 26.)

On January 4, 2012, Walker filed a Request for Review of Hearing Decision. (A.R. 10.) On June 25, 2013, the Appeals Council denied the request for review, making the ALJ's decision the final decision of the Commissioner. On October 8, 2013, Walker brought this action seeking judicial review of the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## STATUTORY AND REGULATORY FRAMEWORK

The Social Security Act provides for the payment of disability insurance benefits to people who have contributed to the social security system and who suffer from a physical or mental disability. See 42 U.S.C. § 423(a)(1). To evaluate whether a claimant is disabled within the meaning of the Act, the ALJ is required to use a five-step analysis. See 20 C.F.R. § 404.1520. The ALJ may end the analysis at any step when it is determined that the claimant is or is not disabled. Pitzer v. Sullivan, 908 F.2d 502, 504 (9th Cir. 1990).

At step one, the ALJ determines whether the claimant is engaged in any "substantial gainful activity," which would automatically preclude the claimant from receiving disability benefits. See 20 C.F.R. § 404.1520(a)(4)(i). If not, at the second step, the ALJ must

2

consider whether the claimant suffers from a severe impairment which "significantly limits [the claimant's] physical or mental ability to do basic work activities." See 20 C.F.R. § 404.1520(a)(4)(ii).  The third step requires the ALJ to compare the claimant's impairment to a listing of impairments in the regulations.  If the claimant's impairment or combination of impairments meets or equals the severity of any medical condition contained in the listing, the claimant is presumed disabled and is awarded benefits.  See 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant's condition does not meet or equal a listing, the ALJ must proceed to the fourth step to consider whether the claimant has sufficient residual functional capacity to perform his past work despite the limitations caused by the impairment.  See 20 C.F.R. § 404.1520(a)(4)(iv).  If the claimant cannot perform his past work, the Commissioner is required to show, at step five, that the claimant can perform other work that exists in significant numbers in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience.  See 20 C.F.R. § 404.1520(a)(4)(v).

Overall, in steps one through four, the claimant has the burden to demonstrate a severe impairment and an inability to engage in his previous occupation.  Andrews v. Shalala, 53 F.3d 1035, 1040 (9th Cir. 1995).  If the analysis proceeds to step five, the burden shifts to the Commissioner to demonstrate that the claimant can perform other work.  Id.

## ALJ's FINDINGS

The ALJ determined that Walker was not under a disability within the meaning of the Act from November 1, 2005, through the date last insured.  Beginning at step one, the ALJ found that Walker had not engaged in any substantial gainful activity from his alleged onset date of November 1, 2005, through his date last insured of December 31, 2010.  (A.R. 17.) At step two, the ALJ determined Walker had the following severe impairments: cervicalgia with radiculitis, chronic back pain, shoulder bursitis, headaches, and obesity.  (A.R. 17.) The ALJ also found that Walker suffered from nonsevere impairments, including tinnitus

3

with mild sensorineural hearing loss at 3-4 kHz, asthma, mild sleep apnea, and depression. (A.R. 20.)

At step three, the ALJ determined that Walker did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R., Part 404, Subpart P, Appendix 1. (A.R. 21.)

At step four, the ALJ found that Walker had the RFC "to perform light work as defined in 20 C.F.R. 404.1567(b) except he is limited to occasional reaching out and overhead." (A.R. 21.) After determining Walker's RFC, the ALJ assessed whether Walker could perform any past relevant work. The ALJ found that Walker had past relevant work as a carpenter, which was performed at the heavy exertion level per Walker's testimony. The ALJ opined that, as Walker was limited to less than the full range of light work, Walker was unable to perform his past relevant work. (A.R. 25.)

Proceeding to step five, the ALJ determined that, considering Walker's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Walker could perform. (A.R. 25.) In support of this determination, the ALJ noted that Walker was 52 years old on the date last insured, had a limited education and was able to communicate in English, and had acquired work skills from past relevant work that were transferable. Id.

The ALJ called a vocational expert ("VE") and asked whether jobs existed in the national economy for an individual with Walker's age, education, work experience and RFC. Id. The VE responded positively, identifying three jobs: (1) surveillance monitor, (2) lobby reception type security, and (3) a host position. (A.R. 25-26.) The VE testified that there were 6,000 surveillance monitor positions in the regional economy, 6,000 lobby reception type security positions in the regional economy, and 5,300 host positions in the regional economy. Id.

The ALJ noted that the VE relied upon statistics released by the Department of Labor and EDD as well as her expertise for determining the qualifications and number of positions available in the regional economy for lobby reception type security positions.

4

(A.R. 26.)  In the written decision, the ALJ stated, "[p]ursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles." (A.R. 26.)  The ALJ concluded that though Walker was not able to perform the full range of light work, considering Walker's age, education and transferable work skills, Walker was "not disabled" under the framework of the Medical-Vocational Guidelines, Rule 202.19 and Rule 202.12. (A.R. 26.)  See 20 C.F.R. Part 404, Subpart P, Appx. 2.

## STANDARD OF REVIEW

This court has jurisdiction to review a final decision of the Commissioner pursuant to 42 U.S.C. § 405(g).  The ALJ's decision must be affirmed if the ALJ's findings are "supported by substantial evidence and if the [ALJ] applied the correct legal standards." Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (citing Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999)).  Substantial evidence "'means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009) (quoting Desrosiers v. Sec'y of Health & Human Servs., 846 F.2d 573, 576 (9th Cir. 1988)).  The evidence must be "more than a mere scintilla," but may be "less than a preponderance". Id. (quoting Desrosiers, 846 F.2d at 576).

If the evidence is susceptible to more than one rational interpretation, the court must uphold the ALJ's findings if they are "'supported by inferences reasonably drawn from the record.'" Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008) (quoting Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th Cir. 2004)).  The court may not reverse an ALJ's decision on account of an error that is harmless. Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) (citing Stout v. Comm'r Soc. Sec. Admin., 454 F.3d 1050, 1055-56 (9th Cir. 2006)).  "'[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.'" Id. (quoting Shinseki v. Sanders, 556 U.S. 396, 409 (2009)).

**ISSUES**

Walker seeks reversal of the Commissioner's denial of benefits on the following grounds:

(1) At step five, the ALJ failed to resolve the conflicts between the Dictionary of Occupational Titles ("DOT") and the vocational expert's testimony regarding the availability of alternate occupations for Walker, as required by Social Security Ruling 00-4p.

(2) The ALJ relied on the VE's erroneous testimony misidentifying the host occupation.

**DISCUSSION**

**I. Alleged Conflicts Between DOT and VE's Testimony**

**A. Surveillance Monitor Job**

**1. Alleged Discrepancy**

Walker argues that the DOT defines the occupation of surveillance system monitor to require sedentary work, but that the VE testified that the "job is light," implying that the job requires "light work" exertion. Pl's Mot. at 14. See DOT 379.367-010, 1991 WL 673244 (Surveillance-system Monitor; "STRENGTH: Sedentary Work"). Walker contends that the ALJ erred in failing to ask the VE about the variance between the sedentary work requirement for the surveillance system monitor job described in the DOT, and the VE's testimony that the job requires light work. The record demonstrates, however, that both the VE and the ALJ stated that the surveillance monitor job is "sedentary." (A.R. 25, 53.) The VE did not, therefore, misstate the exertion level of the surveillance monitor job, and there was no discrepancy between the vocational testimony and the DOT.

**2. Harmless Error**

Walker also argues that the ALJ failed to ask the VE whether her testimony was consistent with the DOT and failed to address any discrepancy. Pl's Mot. at 16-18. Walker cites out of circuit authority for the proposition that "before an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of nondisability, the

6

ALJ must ask the expert how his or her testimony as to the exertional requirement of identified jobs corresponds with the [DOT], and elicit a reasonable explanation for any discrepancy on this point." Pl's Mot. at 16 and n.117 (citing Poppa v. Astrue, 569 F.3d 1167, 1173 n.6 (10th Cir. 2009)). Walker contends that the ALJ's failure to make this inquiry prevents the court from determining whether substantial evidence supports the ALJ's finding that Walker can perform other work, suggesting that the ALJ's failure to ask the VE this specific question should, per se, render the ALJ's decision unsupported by substantial evidence.

In Massachi v. Astrue, the Ninth Circuit recognized the procedural requirements of SSR 00-4p:

> SSR 00–4p unambiguously provides that "[w]hen a [vocational expert] ... provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that [vocational expert] ... evidence and information provided in the [Dictionary of Occupational Titles ]." SSR 00–4p further provides that the adjudicator "will ask" the vocational expert "if the evidence he or she has provided" is consistent with the Dictionary of Occupational Titles and obtain a reasonable explanation for any apparent conflict.

Massachi v. Astrue, 486 F.3d 1149, 1152-53 (9th Cir. 2007). "The procedural requirements of SSR 00-4p ensure that the record is clear as to why an ALJ relied on a vocational expert's testimony, particularly in cases where the expert's testimony conflicts with the Dictionary of Occupational Titles." Id. at 1153.

The Commissioner concedes that the ALJ did not expressly ask the VE whether his testimony was consistent with the DOT, but contends that the error was harmless because there was no actual conflict. Def.'s Opp./Cross-Mot. at 3 (citing Massachi, 486 F.3d at 1154 n.9). Because the record demonstrates that there was no actual conflict between the VE's testimony and the DOT listing as to the exertional requirement of the surveillance monitor job, the ALJ's failure to question the VE about the consistency was harmless procedural error. See Massachi, 486 F.3d at 1154 n.19; Poppa 569 F.3d at 1173 ("Although we agree that the ALJ erred by not inquiring about whether there were any

conflicts between the VE's testimony about the job requirements for the jobs identified and the job descriptions in the DOT, we conclude that this error was harmless because there were no conflicts.").

### 3. Sedentary Exertional Level

Walker argues that because he was found able to perform "light work," the ALJ could not properly rely on the VE's testimony about a "sedentary work" occupation to deny his claim. Pl's Reply at 3. The regulations provide, however, that "[i]f someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567. Here, Walker was found to have an RFC to perform light work, and has not identified any limiting factors that would prevent him from doing sedentary work, which requires less physical exertion than light work. Thus, the ALJ did not err by relying on the VE testimony to find that Walker could perform the sedentary occupation of surveillance monitor.

Furthermore, the VE's testimony that there were 6,000 such jobs in the regional economy provided substantial evidence to support the ALJ's step five finding that Walker was able to do other work and was not disabled. See Gutierrez v. Comm'r of Soc. Sec., 740 F.3d 519, 528 (9th Cir. 2014) (the ALJ's finding of 2,500 jobs in the state satisfied the statutory standard for significant number of jobs); Barker v. Sec'y of Health & Human Servs., 882 F.2d 1474, 1478-79 (9th Cir. 1989) (holding that 1,266 regional jobs constituted "significant" number).

### B. Lobby-Type Security Guard

Walker contends that the VE's testimony conflicted with the DOT with respect to the frequency of reaching required by the occupation of lobby security guard. The ALJ found that Walker was limited to only "occasional reaching out and overhead," but "no problem with the hands in front of you, whether it be sitting or standing." (A.R. 21, 52, 53.) The DOT listing for the occupation of security guard indicates that the job involves reaching "frequently - [e]xists from 1/3 to 2/3 of the time." DOT No. 372.667-034, 1991 WL 673100.

1  Walker argues that this occupation cannot sustain the Commissioner's burden at step five
2  because the VE's testimony that Walker could perform this job was inconsistent with the
3  DOT, without persuasive evidence to support the deviation.  Pl's Mot. at 18 and n.124
4  (citing Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995) ("an ALJ may rely on expert
5  testimony which contradicts the DOT, but only insofar as the record contains persuasive
6  evidence to support the deviation")).  Walker notes that Social Security Ruling 85-15
7  defines "reaching" as "extending the hands and arms in any direction."  SSR 85-15.[1]

8        The Commissioner contends that the ALJ did not restrict Walker's general ability to
9  reach at all, only limiting his ability to reach out or overhead to be occasional.  Def's
10 Opp./X-Mot. at 3-4.  The Commissioner argues that the DOT is silent as to the types of
11 reaching required to perform the job, and that where the DOT is silent, there is no apparent
12 conflict with the VE's testimony.  The Commissioner concedes that the Ninth Circuit has not
13 issued precedential rulings on the question whether the DOT's silence on an issue creates
14 an apparent conflict with a VE's testimony.  The Commissioner does not cite relevant
15 authority addressing limitations on reaching, but cites district court decisions holding that a
16 VE's testimony with respect to a sit/stand option did not create a conflict with the DOT
17 which is silent on the availability of sit/stand options.  Id. at 4-5 (citing authorities).
18 Notwithstanding the authorities recognizing that the DOT does not address sit/stand
19 options, Walker has demonstrated that the DOT occupational listing specifies limitations on
20 reaching, though not enumerating the possible directions or types of reaching.

21       Walker has demonstrated an apparent conflict between the VE's testimony and the
22 DOT listing for the lobby security occupation, which requires frequent, not occasional,
23 reaching.  The record is not clear as to why the ALJ relied on the VE's testimony that
24 Walker could perform the job of security jobs, "mainly lobby reception type security,"
25 without explaining the conflict between the expert's testimony and the DOT.  Massachi, 486
26 F.3d at 1153-54.  See also Prochaska v. Barnhart, 454 F.3d 731, 736 (7th Cir. 2006) ("It is

---

[1] Available at http://www.socialsecurity.gov/OP_Home/rulings/di/02/SSR85-15-di-02.html.

not clear to us whether the DOT's requirements include reaching above shoulder level, and this is exactly the sort of inconsistency the ALJ should have resolved with the expert's help.").

The Commissioner contends that the ALJ may reasonably rely on the VE's professional qualifications and experience, as shown by the VE's use of labor market reports or surveys. Def's Opp./X-Mot. at 6. The record shows that Walker's attorney questioned the VE about the source of her information and job number projections (A.R. 54-55), but the Commissioner concedes that there is no record of the VE's qualifications and experience. See Def's Opp./X-Mot. at 6. The Commissioner also suggests that it is "common sense" that the security guard position would not require frequent or constant reaching out or overhead, but there is no evidence in the record that the ALJ made this common sense assumption. It would be reasonable to infer that the VE considered that Walker was limited to occasional reaching and opined that the lobby or reception security job would not require more than occasional reaching in light of the record that the VE ruled out "light work" occupations that required more than occasional reaching. (A.R. 53.) However, there is not substantial evidence in the record to show that the ALJ made this inference or relied on the VE's qualifications and professional experience and research to conclude that the lobby reception type security occupation would only require occasional reaching out and overhead, and that Walker could perform that job. See Molina v. Astrue, 674 F.3d 1104, 1121 (9th Cir. 2012) ("we may not uphold an agency's decision on a ground not actually relied on by the agency").

The Commissioner suggests that the matter should be remanded to establish the VE's qualifications to support the ALJ's reliance on his testimony. Def's Opp./X-Mot. at 6 (citing Buckner-Larkin v. Astrue, 450 Fed. Appx. 626, 628-29 (9th Cir. 2011) (finding that the VE addressed and explained the conflict between the DOT, which does not discuss a sit/stand option, and the VE's determination that the recommended jobs would allow for a sit/stand option, based on his own labor market surveys, experience, and research)). The court determines, however, that remand is not warranted here because the ALJ's step five

determination was supported by the finding that Walker could perform the occupation of surveillance monitor with jobs existing in significant numbers in the national and regional economy. Thus, the vocational testimony about Walker's ability to perform the lobby reception security job was not necessary to the step five finding that Walker could perform other work and therefore was not disabled. See Yelovich v. Colvin, 532 Fed. Appx. 700, 702 (9th Cir. 2013) (affirming denial of claim for disability benefits where the VE "incorrectly referenced two of the three occupations he deemed [the claimant] was capable of performing" and was only accurate with respect to one occupation).

## II.     Misidentification of Host Occupation

Walker contends that the ALJ relied on the VE's erroneous testimony that there were 5,300 regional jobs as a host "such as in a coffee shop," by referring to a DOT listing for the obsolete occupation of a head host/hostess of a dance hall (DOT 349.667-014; 1991 WL 672884), rather than the DOT listing for a host of a restaurant (DOT 310.137-010; 1991 WL 672671). Walker argues that there is little reason to believe that there are 5,300 dance hall host/hostess jobs in the region. Mot. at 19-20 (citing Farias v. Colvin, 519 Fed. Appx. 439, 440 (9th Cir. 2013)). In Farias, the court held that it was unreasonable to accept the VE's testimony that there were as many as 3,600 head dance hall hostess positions in the local economy, and reasoned that "[t]he most plausible explanation appears to be that the VE properly testified that a person with [the claimant's] characteristics and RFC could perform the job requirements of head dance hall hostess but erroneously provided employment data for restaurant hostess - an occupation that exists in far larger numbers." 519 Fed. Appx. at 440.

The Commissioner concedes that the VE misidentified the DOT number, but argues that this error was harmless because the job numbers given by the VE were accurate and plausible for the occupation of coffee shop host. The Commissioner cites no supporting evidence to demonstrate that the VE was accurate in stating that there were 5,300 coffee shop host jobs (rather than dance hall host jobs) in the region, but the court in Farias recognized that the VE's testimony that there were 3,600 dance hall host jobs in the local

11

economy and 342,000 in the national economy was consistent with the employment numbers for the occupation of restaurant host reported by the Bureau of Labor Statistics. Farias, 519 Fed. Appx. at 440 (citing http://www.bls.gov/oes/current/oes359031.htm).  In light of the reasoning in Farias, there is substantial evidence in the record to support the ALJ's reliance on the VE's testimony that Walker could perform the occupation of host, such as in a coffee shop, of which there were 5,300 positions in the regional economy. See Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record.").

       Walker does not challenge the VE's testimony that Walker could perform the job of a coffee shop host, but suggests that the VE intended to refer to the dance hall host occupation and not the restaurant host occupation.  Pl's Reply at 6.  Walker also points out that there is no DOT code for a coffee shop host, but concedes that the closest DOT listing is "Host/Hostess, Restaurant".  Id. (citing DOT 310.137-010).  In light of the evidence that the VE expressly identified the occupation of a "host, such as in a coffee shop," without reference to a dance hall, and where the VE relied on sources used by the Department of Labor, which lists the occupation of host/hostess for restaurant, lounge and coffee shop collectively, the VE's error in identifying the DOT code for dance hall host, rather than restaurant host, was inadvertent and harmless.  (A.R. 53-55.)  See Molina, 674 F.3d at 1111 ("we may not reverse an ALJ's decision on account of an error that is harmless"). The VE's error in misstating the DOT occupational code is distinguishable from the error found in Farias, where the VE testified that the plaintiff could perform the occupation of dance hall hostess but gave erroneous testimony about the number of available dance hall hostess jobs by relying on the number of jobs for the occupation of restaurant hostess.

       In the alternative, even if the VE's failure to identify the correct DOT code for the host occupation was not merely harmless error, the court determines that remand would not be warranted because there was substantial evidence in the record to support the ALJ's

finding that Walker could perform other work with respect to the surveillance monitor occupation.

## CONCLUSION

For the reasons set forth above, Walker's motion for summary judgment is DENIED and the Commissioner's motion for summary judgment is GRANTED. The Clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

Dated: February 2, 2015

_____
PHYLLIS J. HAMILTON
United States District Judge